# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO ISAAC ARRIAGA LEMUS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:26-cv-00928-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY AMENDMENT, GRANT PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECT RESPONDENT TO PROVIDE PETITIONER WITH BOND HEARING BEFORE IMMIGRATION JUDGE<br><br>(ECF Nos. 1, 13)<br><br>ORDER DENYING PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL<br><br>(ECF No. 15) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

For the reasons set forth herein, the undersigned recommends granting the petition for writ of habeas corpus and ordering that Respondents provide Petitioner with an individualized bond hearing before an immigration judge at which the government must justify Petitioner's continued detention by clear and convincing evidence.

## I.

## BACKGROUND

Petitioner is a citizen of Mexico who was admitted to the United States as a lawful permanent resident on September 29, 1993. (ECF No. 12-2 at 2, 4.[1]) Petitioner has been

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

convicted of numerous felony criminal violations, including possession of destructive device near certain places, evading an officer, carrying a concealed dirk or dagger, battery, possession of controlled substance paraphernalia, disturbing by loud/unreasonable noise, contempt of court/disorderly behavior, stalking violating temporary restraining order, and manufacture, import, sell, possess, weapons prohibited in California. (ECF No. 12-1 at 2; ECF No. 12-2 at 4.) Most recently, on May 7, 2025, Petitioner was convicted of inflicting corporal injury, in violation of California Penal Code section 273.5(A), and sentenced to an imprisonment term of two years. (ECF No. 12-1 at 2; ECF No. 12-2 at 5.)

On October 30, 2025, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") following his release from prison, and ICE initiated removal proceedings by issuance of a notice to appear ("NTA"). (ECF No. 12-1 at 3.) On March 5, 2026, an immigration judge ordered Petitioner removed to Mexico. (ECF No. 12-2 at 34–37.) On March 25, 2026, Petitioner filed an appeal before the Board of Immigration Appeals, and it is currently pending. (Id. at 30–40.)

On February 2, 2026, Petitioner filed the instant petition for writ of habeas corpus, asserting that his prolonged detention without a bond hearing violates due process. (ECF No. 1.) On April 13, 2026, Respondent filed a response. (ECF No. 12.) On July 27, 2026, Petitioner filed a first amended petition ("FAP") and a motion for temporary restraining order ("TRO"). (ECF Nos. 13, 16.) On July 28, 2026, the Court denied the motion for TRO as untimely. (ECF No. 18.)

## II.

## DISCUSSION

### A. First Amended Petition

If a *pro se* "petitioner files a second petition in the district court while his first petition is still pending in that court, the district court must rule on the second petition as a motion to amend under Rule 15." Balbuena v. Sullivan, 980 F.3d 619, 636 (9th Cir. 2020) (citing Goodrum v. Busby, 824 F.3d 1188, 1195 (9th Cir. 2016). A party may amend its pleading once as a matter of course within 21 days after serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1). "In all other

cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). See Mayle v. Felix, 545 U.S. 644, 655 (2005) (noting Federal Rule of Civil Procedure 15 is applicable to habeas proceedings). Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court may decline to grant leave to amend "if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, Petitioner filed a first amended petition more than 21 days after service of Respondents' responsive pleading. Accordingly, Petitioner is not entitled to amend as a matter of course. Given that the FAP is the same form petition as the original petition, the Court finds that amendment would be futile and thus recommends denying amendment. Nonetheless, as the two petitions are the same form petition, Petitioner will not be prejudiced by the denial of amendment and the Court will address Petitioner's prolonged detention due process claim below.[2]

**B. Immigration Detention Statutes and Bond Hearings**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Here, Petitioner is detained pursuant to 8 U.S.C. § 1226(c),[3] which provides in pertinent part that the "Attorney General shall take into custody any alien who . . . is deportable by reason

---

[2] The Court notes that although counsel for Respondents gave Respondents' response to a member of the U.S. Attorney support staff for mailing, it appears Petitioner may not have received Respondents' response. Counsel for Respondents has mailed another copy of the response to the petition and caused a copy of the response to be given to the Warden of Petitioner's facility, who agreed to effectuate personal service on Petitioner on July 31, 2026. (ECF No. 19.) Although the Court has not received Petitioner's reply to Respondents' response, the undersigned finds that issuance of the findings and recommendation is appropriate without further delay.

[3] The Ninth Circuit has "conclude[d] that Subsection C applies throughout the administrative and judicial phases of removal proceedings." Avilez v. Garland, 69 F.4th 525, 535 (9th Cir. 2023).

of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title[.]" 8 U.S.C. § 1226 (c)(1)(B). Section 1226(c) "specif[ies] that the Attorney General 'may release' one of those aliens '*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (emphasis in original).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged

detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that "§§ 1225(b)(1) and (b)(2) contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

There has been a dearth of guidance regarding the point at which an immigration detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53 F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly

declined to decide constitutional challenges to bond hearing procedures in the immigration detention context"). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024).

In upholding mandatory detention under 8 U.S.C. § 1226(c) in Demore, the Supreme Court made repeated references to the "brief" and "limited" timeframe at issue. See Demore, 538 U.S. at 513 ("brief period"); id. at 523 (("brief period"); id. at 526 ("limited period"); id. at 529 n.12 ("[t]he very limited time of the detention at stake under § 1226(c)"); id. at 531 ("limited period"). Demore specifically noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," relying on statistics from the Executive Office for Immigration Review ("EOIR"). 538 U.S. at 530. However, "[t]hirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors,'" and for the years 1999–2001, the "average length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Rodriguez v. Nielsen, No. 18-CV-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citing Letter from Acting Solicitor General Ian H. Gershengorn to Hon. Scott S. Harris (Aug. 26, 2016), at 2, 3, Demore v. Kim, 538 U.S. 510 (2003) (No. 01-1491)). "The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years." Rodriguez, 2019 WL 7491555, at *5 (citing Joint Appendix (Table 20) (Aug. 26, 2016), Jennings v. Rodriguez, 583 U.S. 281 (2018) (No. 15-1204)). The Government Accountability Office conducted a study and "found that as of 2015,

the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." Rodriguez, 2019 WL 7491555, at *5 (citing United States Government Accountability Office, Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges 33 (2017), https://www.gao.gov/assets/690/685022.pdf).

As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) in Demore. See Demore, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of § 1226(c) *itself*." (emphasis added)); Black v. Decker, 103 F.4th 133, 149 n.22 (2d Cir. 2024) ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]"). In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court expressly preserved the right to bring an as-applied challenge: "Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420. See Black, 103 F.4th at 149 (*Demore* "said nothing about whether due process may *eventually* require a hearing. If *Demore* had, in fact, foreclosed the due process challenge now before us, the *Jennings* Court would have had no reason to remand to the Ninth Circuit 'to consider ... in the first instance' the detainees' argument that '[a]bsent ... a bond-hearing requirement, ... [section 1226(c)] would violate the Due Process Clause of the Fifth Amendment.'" (alterations in original) (quoting Jennings, 583 U.S. at 291, 312)).

Based on the foregoing, the Court finds that Petitioner's as-applied constitutional challenge is not foreclosed.

**C. Due Process Analysis**

Courts in the Ninth Circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez, 2019 WL 7491555, at *6 (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which

include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black, 103 F.4th at 147 ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under

*Mathews*"); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382 (E.D. Cal. May 16, 2025) (applying Mathews test to determine whether due process entitled petitioner to a bond hearing in § 1225(b) context), findings and recommendations adopted, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

Petitioner contends that "[d]etention without a bond hearing is unconstitutional when it exceeds six months," and even absent a bright-line six-month standard, his "detention without any individualized review, is unreasonable under the *Mathews v. Eldridge* due process test" or alternatively, "under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020)." (ECF No. 1 at 8, 9.) Given that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, the Court will apply the Mathews test in addition to addressing the bright-line rule.

1. Bright-Line Rule

The First, Second, and Third Circuits have "reject[ed] a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." Black, 103 F.4th at 150 (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The Court finds such authority persuasive and declines to adopt a bright-line rule that detention without a bond hearing is presumptively unconstitutional when it exceeds six months.

2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

**a. Private Interest**

With respect to the first factor, the Court finds that the private interest at issue here is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews.*" (quoting Singh, 638 F.3d at 1208)). Accordingly, the first Mathews factor weighs in favor of Petitioner.

**b. Risk of Erroneous Deprivation**

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

Petitioner is detained under § 1226(c) and thus, does not have a statutory right to a bond hearing. Petitioner has been detained since October 30, 2025, approximately nine months, and has not received any bond hearing before a neutral decisionmaker with authority to grant bond. Accordingly, the Court finds that the risk of erroneous deprivation of Petitioner's liberty interest

and the probable value of additional procedural safeguards is high. See Jimenez v. Wolf, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) ("[T]he risk of an erroneous deprivation of Landeros Jimenez's liberty interest is high. He has not received any bond or custody redetermination hearing during his one-year detention. Thus, the probable value of additional procedural safeguards—a bond hearing—is high, because Respondents have provided virtually no procedural safeguards at all."). Therefore, the second Mathews factor weighs in favor of Petitioner.

**c. Government's Interest**

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

It is important to stress that the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz, 2020 WL 1862254, at *7. See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing

Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers"). Accordingly, the third Mathews factor weighs in favor of Petitioner.

In sum, each of the Mathews factors weighs in favor of Petitioner. Accordingly, the undersigned recommends finding that Petitioner is entitled to a bond hearing.

**D. Remedy**

Petitioner requests this Court to hold a hearing to determine whether Petitioner's detention is warranted. (ECF No. 1 at 17.) Respondents argue that "[i]n the event that the petition were granted, the only appropriate relief is a bond hearing, not release, with the burden of proof on Petitioner, not the government." (ECF No. 12 at 11.)

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. The Court now turns to the burden of proof at the bond hearing and which party should bear such burden.

Having "previously applied the canon of constitutional avoidance to interpret . . . immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a statutory right to a bond hearing once detention becomes prolonged," the Ninth Circuit in Singh "concluded that for these hearings to comply with due process, the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may have declined to impose the standard articulated in Singh, the panel majority specifically stated that it was not "decid[ing] whether Singh remains good law in any respect following Jennings" and even recognized that Singh was based "on general principles of procedural due process, reasoning that a detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has

suggested post-Jennings that Singh remains good law in Martinez v. Clark, which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," but did address "the scope of federal court review of those bond determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand, and after Rodriguez Diaz was decided, the Martinez panel reconfirmed "that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" and "that the BIA applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

The Court will follow the "overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community," Sanchez-Rivera, 2023 WL 139801, at *7, even post-Rodriguez Diaz. See, e.g., Black, 103 F.4th at 138 ("[T]he district court properly required the government to show at such a bond hearing, by clear and convincing evidence, the necessity of his continued detention. It further correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance."); Pham v. Becerra, 717 F. Supp. 3d 877, 888 (N.D. Cal. 2024); J.P. v. Garland, 685 F. Supp. 3d 943, 949 (N.D. Cal. 2023).

Further, in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the IJ should consider Petitioner's financial circumstances or alternative conditions of release. See Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ('IJ'), in setting his bond and establishing appropriate terms for his

potential release, to consider his ability to pay and alternative means of assuring appearance.”).

**E. Motion for Appointment of Counsel**

Petitioner has moved for appointment of counsel. (ECF No. 15.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See, e.g., Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the proceeding for financially eligible persons if “the interests of justice so require.” To determine whether to appoint counsel, the “court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.” Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

In light of the Court’s conclusion that Petitioner is entitled to habeas relief, the undersigned will deny Petitioner’s motion for appointment of counsel.

**III.**

**RECOMMENDATION & ORDER**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Petitioner’s motion to amend (ECF No. 13) be DENIED;
2. The petition for writ of habeas corpus be GRANTED;
3. Respondents be directed to provide Petitioner with a bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which
    a. “the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond,” Singh, 638 F.3d at 1203, and
    b. the IJ should consider Petitioner’s financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

\\\

Further, the Court HEREBY ORDERS that Petitioner's motion for appointment of counsel (ECF No. 15) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 5, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE